UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KENNETH LEE ZAMARRON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:17-cv-00275-JMS-DLP |
| ) | |
| WARDEN,[1] ) | |
| ) | |
| Respondent. ) | |

**Order Denying Petition for Writ of Habeas Corpus
and Denying a Certificate of Appealability**

Petitioner Kenneth L. Zamarron is serving a 97-year sentence for his 2009 Lake County, Indiana, convictions for murder, robbery, burglary, cruelty to animal, attempted carjacking, and attempted criminal confinement. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Mr. Zamarron's petition for a writ of habeas corpus is **denied** and the action **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

### I. Factual and Procedural Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1);

---

[1] In 2017, the Indiana legislature changed the Department of Correction title of Superintendent to Warden. Indiana Senate Enrolled Act 387, Pub. L. No. 67-2017, §§ 1–20, 2017 Ind. Acts 241, 241–52. The substitution of Warden for Superintendent is made in this action pursuant to *Fed. R. Civ. P.* 25(d).

*Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).[2] On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history:

> Gregory Grudzien ("Grudzien") and Marianna Bobella ("Bobella") were co-owners of a Hammond, Indiana business. Customarily, while Bobella worked the early evening shift, Grudzien would go to Bobella's house to gather the mail and let her dog outside. On November 29, 2007, at about 8:30 p.m., Grudzien called Bobella and told her that her house had been "ransacked." When Bobella arrived home approximately fifteen minutes later, Grudzien was lying dead in the street. He had suffered a skull fracture and multiple stab wounds. Bobella's dog was lying dead in a pool of blood underneath the kitchen table.
>
> The front door windows of Bobella's home had been broken; numerous items inside the house were broken or overturned. A Dodge Neon with a flat tire was parking in front of Bobella's house. Inside it were several items of Bobella's property. Grudzien's blood was on the gearshift. The Neon was registered to the step-parent of Victor Hernandez ("Hernandez").
>
> Approximately one half hour after Bobella was called home, Zamarron and Hernandez were seen walking in the middle of the street one block away from Bobella's residence. As Jack and Loretta Simmons pulled their vehicle into their driveway, Zamarron and Hernandez approached the vehicle. Zamarron pounded on the windshield and yelled. He tried unsuccessfully to open the driver's side door. Loretta Simmons was able to drive away.
>
> Approximately five to six blocks from Bobella's home, Ana and Doris Almaraz were seated in a vehicle at a gas station when Zamarron and Hernandez approached the vehicle. Zamarron demanded the key while Hernandez, holding an object that appeared to be a bloody kitchen knife, ordered Doris to get out of the vehicle. Ana refused to tender the key, and Zamarron doused her with gasoline. Doris began screaming, and the two men ran away.
>
> Police officers responded to reports of these various encounters. When the officers spotted Zamarron and Hernandez, they began to run. However, they were apprehended while still covered in blood later determined to be from Grudzien. Zamarron's DNA was found inside the Bobella home, and his fingerprint was found on a bottle of liquor retrieved from the house. A shoeprint in Grudzien's blood near his body was made by a Converse athletic shoe; Zamarron was wearing Converse athletic shoes when he was apprehended.

---

[2] In his petition, Mr. Zamarron objects to the facts as presented by the Indiana Court of Appeals. However, he has failed to provide clear and convincing evidence to contradict the Indiana Court of Appeals' version of the facts, beyond his own written statement. *See* dkt. 1 at 5, 9-33.

> The State charged Zamarron with ten criminal offenses, including murder, robbery, attempted carjacking, attempted criminal confinement, burglary, and cruelty to an animal. At the conclusion of a jury trial on November 24, 2008, Zamarron was found guilty as charged.
>
> The trial court entered judgments of conviction on a single count of murder, robbery (reduced to a Class C felony), burglary, and cruelty to an animal, and two counts each of attempted carjacking and attempted criminal confinement. On January 5, 2009, Zamarron was sentenced to an aggregate term of imprisonment of ninety-seven years.

*Zamarron v. State*, 2009 WL 2869933, *2 (Ind. Ct. App. Sept. 4, 2009) ("*Zamarron I*"); *see also* dkt. 10-5 at 2-3.

Mr. Zamarron appealed, challenging the sufficiency of the evidence to support his convictions for murder, robbery, and cruelty to an animal. *Zamarron I* at *1. The Indiana Court of Appeals affirmed his conviction. *Id.* at *3. Mr. Zamarron sought review from the Indiana Supreme Court, but that court denied transfer on October 29, 2009. Dkt. 10-2 at 3.

On October 4, 2010, Mr. Zamarron filed a *pro se* petition for post-conviction relief. On December 16, 2015, after five years of Mr. Zamarron's stalling and failure to litigate his various post-conviction petitions, the PCR court dismissed Mr. Zamarron's petition with prejudice for failure to prosecute. On appeal for post-conviction relief, the Indiana Court of Appeals summarized the relevant procedural history:

> On October 4, 2010, Zamarron filed a pro se petition for post-conviction relief and alleged that his trial counsel and appellate counsel were ineffective. On November 12, 2010, a public defender filed an appearance on behalf of Zamarron. On January 10, 2011, the public defender filed a motion to continue the post-conviction hearing. The next day, the court granted the motion to continue, rescheduled the hearing for May 2, 2011, and stated that "[t]his will be the last continuance of the hearing on the petition for post-conviction relief barring any extraordinary circumstances." Appellant's Appendix at 49.
>
> On March 8, 2011, the public defender withdrew her appearance and moved for a continuance to allow Zamarron to be prepared if he wished to proceed pro se. On March 11, 2011, the court rescheduled the hearing to August 2, 2011, and directed

3

the clerk to notify Zamarron that he may either hire private counsel or represent himself at the hearing.

On August 2, 2011, Zamarron orally requested a continuance. The court granted the motion and rescheduled the hearing to August 8, 2012. The court's order states that "[t]his will be the last continuance of the hearing on the petition for post-conviction relief barring any extraordinary circumstances." Id. at 57.

On August 8, 2012, the court held a hearing. At the hearing, Zamarron stated: "I don't have nothing to say." Transcript at 3. After some discussion, Zamarron stated that the trial court committed a sentencing error and that he could not knowingly or intentionally commit murder if he was intoxicated and that he did not have the right mind set. The court told Zamarron that he would have to set forth evidence. Zamarron stated that he asked his lawyer about the Breathalyzer "to bring it up during the trial, and he didn't, so it's ineffective of [sic] counsel." Id. at 8. The court asked Zamarron if he wanted it to accept the record of proceedings into evidence, and Zamarron said yes. The court indicated that it would obtain the record of proceedings from the appellate court and it would be admitted as an exhibit. The court stated that it would make him file findings of fact and conclusions of law and granted him one year to do so until August 9, 2013.

On August 26, 2013, the court ordered Zamarron to show cause on or before September 25, 2013, as to why his petition should not be dismissed for failure to prosecute. On September 25, 2013, Eduardo Fontanez filed an appearance on behalf of Zamarron and a motion for extension of time to file findings of fact and conclusions of law. The court gave Zamarron until December 16, 2013, to file his proposed findings of fact and conclusions of law.

On December 20, 2013, the court entered an order observing that Zamarron had failed to timely file findings of fact and conclusions of law and ordering that he show cause on or before January 21, 2014, as to why the petition for post-conviction relief should not be dismissed for failure to prosecute.

On January 17, 2014, Zamarron filed a pro se motion to withdraw his petition for post-conviction relief without prejudice. On February 6, 2014, the State filed a response to Zamarron's motion to withdraw, detailed the case history, and argued that the court consider denying Zamarron's motion.

On February 6, 2014, the court denied Zamarron's motion to withdraw without prejudice and ordered that he may either withdraw his petition with prejudice or he or his attorney must file proposed findings of fact and conclusions of law on or before March 14, 2014.

On February 27, 2014, Zamarron filed multiple motions. He filed a motion for indefinite extension of time asserting that he needed the record to effectively raise and argue his issues in his facts and findings, that he believed he would have the

record within the next ninety days, that he is limited to less than two hours of law library time weekly, and that he would file a certificate of readiness once he had received the record and amended his petition. He filed a Motion for Original Copy of Direct Appeal Transcript(s), Oral Arguments and Appendices, Opinions and Original Record of Proceedings. He also filed a motion requesting that the court issue an order to the Clerk of the Supreme Court and Court of Appeals for the removal of the original record. He filed a Motion to Hear Cause as to Why Petitioner Should be Granted a Second Evidentiary Hearing, and asserted that his ability to proceed pro se was hindered by his assumption that once he retained counsel, his counsel would promptly begin rendering his services, but counsel failed to perform his obligatory duties and his substantial rights were jeopardized and he was placed in a perilous position. Lastly, he filed a motion for leave to amend his petition and an affidavit of indigency.

The court granted Zamarron's motion for indefinite extension of time in part and gave him until June 12, 2014, to file his proposed findings of fact and conclusions of law. The court denied Zamarron's motion to issue an order to the Clerk of the Supreme Court and Court of Appeals regarding the records because "the records requested are in the possession of the Indiana Court of Appeals and this court is without jurisdiction to order its release." Appellant's Appendix at 95. The court ordered the State to file a response to Zamarron's other motions.

On March 14, 2014, the State filed a response to Zamarron's motion to admit the record into evidence observing that the court had already granted Zamarron's request to admit the record at the August 8, 2012 hearing, and that it would leave it to the court's discretion whether the record should be admitted as Petitioner's Exhibit 1 given the repetitive nature of the request. The State filed a response to Zamarron's motion for leave to amend his petition detailing the case history and requesting that the court deny the motion. The State also filed a response to Zamarron's motion to hold a second evidentiary hearing and requested that the motion be denied given the significant amount of time that had passed and because Zamarron failed to make any specific showing why a second hearing was necessary.

On April 1, 2014, Zamarron, by Fontanez, filed a motion for extension of time to file findings of fact and conclusions of law. That same day, the court granted the motion in part.

On April 2, 2014, Zamarron filed a reply to the State's response to his motion regarding a second evidentiary hearing in which he indicated that he was proceeding pro se. The court entered an order refusing to file Zamarron's motion because he was represented by counsel.

On April 23, 2014, the court ordered Fontanez to appear on May 2, 2014, to show cause for his failure to comply with an earlier order that Fontanez notify the court as to whether he would remain in the case by April 15, 2014. On May 2, 2014, the court held a hearing and issued an order indicating that Fontanez was to file notice

"as to determination of counsel" before May 23, 2014. *Id*. at 116. On May 21, 2014, Fontanez filed a motion to withdraw. On May 22, 2014, the court entered an order granting Fontanez's motion to withdraw and giving Zamarron until July 21, 2014, to file his proposed findings of fact and conclusions of law. On June 4, 2014, Zamarron filed a motion for continuance of one year to seek out the assistance of new counsel or "in the extreme alternative to prepare his Findings of Fact and Conclusions of Taw." *Id*. at 122. That same day, the court granted Zamarron's motion in part and ordered Zamarron to file proposed findings of fact and conclusions of law by July 21, 2015, and advised him that "this will be the last continuance granted with or without counsel." *Id*. at 124. The State subsequently filed an objection to Zamarron's request for a continuance, and the court affirmed its June 4th order.

On January 26, 2015, in his direct appeal cause number, this court entered an order granting Zamarron's motion to extend release of appellate record and ordering that Zamarron's counsel either return the original record on appeal intact to the Office of the Clerk of the Court of Appeals or file a motion requesting additional time to retain the record. On April 15, 2015, this court issued an order under his direct appeal cause number granting Zamarron's motion for a copy of the record and stating the Public Defender may cause the copy to be transmitted to Zamarron for examination "provided however, that if the Public Defender has agreed to serve as counsel for the Appellant and the Appellant wishes to continue to be represented by the Public Defender, then the Appellant is not entitled to a copy of the record of proceedings at public expense and the Public Defender is relieved of the obligation to make a copy of that record, any contrary language in this Order notwithstanding." *Id*. at 203.

On July 20, 2015, Zamarron, pro se, filed a motion to withdraw his petition for post-conviction relief without prejudice. He alleged that filing proposed findings of fact and conclusions of law would be futile in light of the fact that he appeared pro se at the hearing and did not call any witnesses or present any evidence. He stated that his trial counsel "failed to investigate, confront and confer with client, present codefendant's confession instead of lie." *Id*. at 174. Zamarron suggested that the evidence to convict him was insufficient and that his act of stabbing the man was justifiable because it was done in defense of Hernandez. Zamarron asserted that his trial counsel encouraged him to testify falsely that Hernandez and another person had involuntarily intoxicated him. He stated that his appellate counsel failed to raise the argument that his sentence was inappropriate. Zamarron contended that he could not develop evidence to support his assertions in the four years since he filed his petition because he was a juvenile incarcerated as an adult, most court documents were destroyed by the Department of Correction officers, his attempt at obtaining a copy of the record on appeal had been futile until recently, his post-conviction counsel was ineffective, and the appellate decision regarding his codefendant Hernandez was not published. Lastly, he stated that delaying the proceedings would allow him to receive a copy of the record, request subpoenas for

counsel, submit evidence, gain a meaningful post-conviction hearing, and provide a better petition.

On August 5, 2015, the State filed a response to Zamarron's motion requesting that the court deny the motion. The State asserted that, "[a]lthough [Zamarron] has provided reasons to the court why the delay is necessary, it is apparent from his motion that [he] would be requesting to re-open evidence, even though a hearing was already held almost three (3) years ago, following a one year delay of the original hearing date." Id. at 227. The State argued that the court was well within its discretion to deny Zamarron's motion given the ample time that had passed. That same day, the court denied Zamarron's motion to withdraw his petition without prejudice and directed him to file proposed findings of fact and conclusions of law or a motion to withdraw his petition for post-conviction relief with prejudice on or before October 5, 2015.

On August 10, 2015, Zamarron, pro se, filed an addendum to his motion to withdraw his petition for post-conviction relief without prejudice which asserted that he had received the Record on Appeal and that: (1) his trial counsel failed to tender an instruction or object when the trial court erred in permitting the jury to return a guilty verdict on murder without specifying whether the conviction was based on murder or felony murder; (2) his trial counsel failed to tender instruction to cure or object when the court erred in permitting the jury to return inconsistent verdicts of Counts I through IV and IX; (3) appellate counsel failed to raise either of the above issues as fundamental error; and (4) the trial court gave an instruction on accomplice liability but later stated that it could not tell who was the more aggressive perpetrator and sentenced Zamarron to two years more than Hernandez.

On September 16, 2015, the State filed a response to Zamarron's addendum and continued to object to Zamarron's motion and stated that the addendum did not appear to raise significant legal issues meriting the re-opening of the case for further hearings. That same day, the court entered an order denying Zamarron's motion to withdraw his petition without prejudice and ordering him to file his proposed findings of fact and conclusions of law by December 15, 2015.

On December 11, 2015, Zamarron filed a "2nd and Final Addendum" to his motion to withdraw his petition and asserted that he found additional issues after receipt of the record on appeal and additional evidence supporting these issues. *Id*. at 239. He asserted that the addendum was intended to incorporate his July 2015 motion and his August 4, 2015 addendum. On December 17, 2015, the court dismissed Zamarron's petition for post-conviction relief with prejudice for failure to prosecute. The court's order stated in part: "Instead of filing his proposed finding of fact and conclusions of law on December 15, 2015 as ordered, the petitioner AGAIN moves to withdraw his petition for postconviction relief without prejudice, even though that request has previously been denied on two (2) occasions." *Id*. at 441. On January 14, 2016, Zamarron filed a notice of appeal. On January 15, 2016,

> Zamarron filed a "Corrected" version of his "Second and Final Addendum" to his motion to withdraw, and the court denied it as moot. *Id*. at 442.

*Zamarron v. State*, 2016 WL 3552827, *2-5 (Ind. Ct. App. June 30, 2016) ("*Zamarron II*"); *see also* dkt. 10-13 at 5-13.

Mr. Zamarron appealed the PCR court's dismissal of his petition. On June 30, 2016, the Indiana Court of Appeals affirmed the state post-conviction court's dismissal for failure to prosecute. *Zamarron II* at *6-8. Mr. Zamarron petitioned the Indiana Court of Appeals to rehear his case, which was denied. Dkt. 10-14; dkt. 10-15. Mr. Zamarron sought review from the Indiana Supreme Court, but that court denied transfer on February 23, 2017.

On June 14, 2017, Mr. Zamarron filed this petition for a writ of habeas corpus.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Zamarron's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"); *see Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted). When a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules

(*i.e*., because the petitioner failed to prosecute), that decision rests on independent and adequate state procedural grounds. *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (citing *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009); *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010)).

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. In Indiana, that means presenting his arguments in a petition to transfer to the Indiana Supreme Court. *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001). A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992).

"A procedural default can be overlooked when the petitioner demonstrates cause for the default and consequent prejudice, or when he shows that a fundamental miscarriage of justice will occur unless the federal court hears his claim." *Wilson v. Briley*, 243 F.3d 325, 329 (7th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008). To demonstrate cause, the petitioner "must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).) "[A] procedural default will not bar a federal habeas court from hearing a substantial

claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2012)).

### III. Discussion

Mr. Zamarron raises many grounds in his petition. *See* dkt. 1. Nine of the grounds are that his trial counsel was ineffective because his trial counsel: (1) allegedly had multiple conflicts of interest, dkt. 1 at 9, 29; (2) told him to lie, and that false testimony was later held against him by the jury, dkt. 1 at 9, 29-31; (3) failed to investigate his "uncorroborated denial," dkt. 1 at 9-10, 29-30; (4) failed "to request lesser included offense of Voluntary Manslaughter," dkt. 1 at 10, 31; (5) "raised an objectively deficient trial strategy" by having him testify, dkt. 1 at 10; (6) failed to investigate the law and facts of his case, particularly as to inconsistent verdicts, dkt. 1 at 10-11, 30; (7) failed to object to the knowing use of perjured testimony, dkt. 1 at 12; (8) failed to submit "readily available evidence to negate the State's case on all charges," dkt. 1 at 12; and (9) failed to tender instructions to cure or object to the trial court's erroneous jury instructions, dkt. 1 at 31. In ground ten, Mr. Zamarron alleges that his appellate counsel was ineffective for failing to challenge the appropriateness of his sentence under accomplice liability theory, dkt. 1 at 12. In ground eleven, Mr. Zamarron alleges that his post-conviction counsel, both of whom later withdrew, were ineffective for some unspecified reason. Dkt. 1 at 12. In ground twelve, Mr. Zamarron claims that the Indiana Court of Appeals' June 30, 2016, decision was contrary to clearly established federal law because "conflict of interests requires Federal law different than Strickland" and the Indiana Court of Appeals unreasonably applied *Strickland*. Dkt. 1 at 4-5. Mr. Zamarron also asserts that "[a] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the state[']s initial-review collateral

proceeding, there was no counsel or counsel in that proceeding was ineffective. See Trevino v. Thaler 569 U.S. __ 2013 (5-28-2013)." *See, e.g.*, dkt. 1 at 4.

Respondent argues that Mr. Zamarron's claims are barred because the Indiana Court of Appeals' decisions were based on independent and adequate state law grounds, and that in any case, Mr. Zamarron's claims are procedurally defaulted because he never presented his claims to the Indiana Supreme Court. Dkt. 10.

In reply, Mr. Zamarron asserts that the Indiana Court of Appeals improperly dismissed his case in violation of Indiana Trial Rule 41(E). Dkt. 15 at 2-3. He also argues that the PCR trial court did not address any ineffective assistance of counsel claims because his PCR counsel was ineffective for failing to raise his ineffective assistance of trial and appellate counsel claims. *Id.* at 3-4. He also argues all of his claims were properly raised, but that the post-conviction trial court illegally dismissed his petition. *Id.*

Here, Mr. Zamarron has raised nine claims of ineffective assistance of trial counsel, one claim of ineffective assistance of appellate counsel, one claim of ineffective assistance of PCR counsel[3], and one claim that the Indiana Court of Appeal's June 30, 2016, decision was contrary to clearly established *Strickland* federal law.[4] However, Mr. Zamarron failed to raise any of these claims to the Indiana Court of Appeals or to the Indiana Supreme Court. Therefore, Mr. Zamarron has failed to exhaust his state court remedies as to those grounds. At this juncture, this failure constitutes a procedural default of these grounds.

---

[3] The Court notes that there is no constitutional right to an attorney in state post-conviction proceedings, and therefore "a petitioner cannot claim constitutional ineffective assistance of counsel in such proceedings" as a substantive ground for relief. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

[4] The Indiana Court of Appeal's June 30, 2016, decision does not apply *Strickland* or discuss any claims of ineffective assistance of counsel. *See Zamarron II.*

In his petition and in his reply, Mr. Zamarron argues that the post-conviction trial court improperly dismissed his post-conviction petition under Indiana Trial Rule 41(E) without a hearing and that his PCR counsel was ineffective for failing to raise his claims of ineffective assistance at trial or on appeal. Neither of Mr. Zamarron's arguments, however, address why he failed to raise any claims of ineffective assistance of counsel in his appeal to the Indiana Court of Appeals or in his petition to transfer to the Indiana Supreme Court. The only issue properly raised was whether the post-conviction trial court abused its discretion in denying his motion to withdraw his petition without prejudice and dismissing his post-conviction petition with prejudice for failure to prosecute.

Mr. Zamarron first argued that the post-conviction trial court improperly dismissed his petition under Indiana Trial Rule 41(E) without a hearing, but he failed to raise this argument on appeal. Because he failed to raise the argument, the Indiana state courts did not consider that argument, and thus, the argument is now waived. *See Chrysler Motor Corp. v. Resheter*, 637 N.E.2d 837, 839 (Ind. Ct. App. 1994) (providing that failure to raise an argument in the appellant's brief constitutes waiver), *trans. denied.*

Mr. Zamarron also argued that his PCR counsel was ineffective for failing to raise his claims of ineffective assistance at trial or on appeal. However, Mr. Zamarron properly raised claims of ineffective assistance of counsel in his post-conviction petition. *See* Appellants Appendix, Volume I, pp. 30-37. An evidentiary hearing on his claims was held, and Mr. Zamarron was provided several opportunities to submit proposed findings of fact and conclusions of law. The post-conviction court only dismissed his petition with prejudice for failure to prosecute after he failed to respond to multiple orders to show cause. It cannot be said that Mr. Zamarron was denied an opportunity to bring and litigate his ineffective assistance of counsel claims. Nor can

Mr. Zamarron attribute his failure to present his claims to the Indiana Supreme Court to his PCR counsel.

In short, Mr. Zamarron fails to make the necessary showing to overcome the procedural default of his claims. Accordingly, Mr. Zamarron is not entitled to habeas relief on any ground in his petition because none of them have ever been presented to the Indiana Court of Appeals and Indiana Supreme Court.

## IV. Conclusion

This Court has carefully reviewed the state record in light of Mr. Zamarron's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits.

Having applied the appropriate standard of review, and having considered the pleadings and the record, Mr. Zamarron's petition for writ of habeas corpus must be **denied.**

The clerk is **directed to update the docket** to reflect the substitution of Warden for Superintendent as the Respondent in this action.

Judgment consistent with this Order shall now issue.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that reasonable jurists would not find this Court's "assessment of the constitutional claims debatable or wrong," or would not find it debatable "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 9/14/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

KENNETH LEE ZAMARRON
194018
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Chandra Hein
INDIANA ATTORNEY GENERAL
chandra.hein@atg.in.gov